SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**GREGORY R. NYHUS, OSB #913841**
Assistant United States Attorney
Greg.R.Nyhus@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorney for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00388-AB** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **AUGUST DEAN GORDON,** | |
| **Defendant.** | |

A sentence of 4 months' imprisonment is warranted for this unusually violent resistance to an arrest for vandalism.  Defendant viciously struggled against an arrest, resulting in the injury of five federal law enforcement officers.  A sentence of incarceration is reasonable and is consistent with the factors enumerated in 18 U.S.C. § 3553(a).

## I.    CRIME OF CONVICTION

A.    Charges

On October 14, 2025, the defendant waived indictment and pled guilty to an Information which charged that on or about June 29, 2025, in the District of Oregon, defendant August Dean Gordon, did

**Government's Sentencing Memorandum**                                **Page 1**

forcibly assault Adult Victim 1 (AV1), a person designated as a federal officer under 18 U.S.C. § 1114, while AV1 was engaged in, and on account of the performance of AV1's official duties, and which assault involved physical contact; in violation of 18 U.S.C. § 111(a)(1).

A conviction under the indictment is a felony.  The maximum sentence is up to 8 years imprisonment, three years of supervised release and a fine of $250,000, three years of supervised release, and a $100 fee assessment.

B.      Plea Agreement

The defendant's guilty plea was entered pursuant to a written Rule 11(c)(1)(B) plea agreement.  The Court is not bound by the recommendation of the parties or the presentence report.  The defendant may not withdraw his guilty plea or rescind the plea agreement if the Court does not follow the plea agreement or the recommendations of the parties.

The defendant has waived his appeal rights, subject to a standard waiver with limitations, including constitutional limitations on that waiver.

C.      Offense Conduct

In the early morning hours of June 29, 2025, protesters were gathered outside the U.S. Immigration and Customs Enforcement (ICE) building on Macadam Avenue in Portland, Oregon.  At approximately 3:14 a.m., security footage captured an individual later identified as the defendant approaching the proximity card reader mounted on a stanchion at the facility's driveway entrance.  Defendant was ready for combat - dressed in all black, wearing elbow pads, chest and back padding, a black bicycle helmet, clear goggles, and a blue surgical mask.  The footage showed him reaching the card reader and pulling an object off the stanchion in a sharp, jerking motion.

**Government's Sentencing Memorandum**                                                    **Page 2**



Afterward, ICE and Federal Protective Service (FPS) personnel inspected the stanchion and observed that the card reader—previously mounted at the center—had been forcibly removed, leaving exposed wiring where the device had been.  Based on the surveillance footage and the distinctive clothing, agents located Gordon within the nearby crowd and moved to arrest him.  When officers attempted to make contact and take him into custody, Gordon fled, prompting a short pursuit.

Agents then attempted to detain him, but Gordon violently struggled and resisted despite repeated verbal commands to stop.  As officers tried to place him in handcuffs, he continued to fight, headbutting officers, kicking several multiple times and striking officers in the groin, legs, shins, forearm, and back.  He also grabbed and squeezed officers by the genitals during the struggle.  Officers ultimately subdued him by placing him in leg shackles, then loaded him into a vehicle, transported him into the ICE facility, and placed him under arrest.

Following the arrest, FPS agents interviewed and photographed defendant.  While being photographed for identification purposes, defendant continued to act out by flipping officers off.

During the interview stated that he had come to the ICE building to protest what he described as a "Handmaid's Tale"-style dictatorship, white supremacy, and "selling abducted

people to death camps." When confronted with the surveillance footage, Gordon admitted that he yanked the keycard reader from the stanchion and later discarded it. He also boasted of his assaultive behavior during the arrest encounter, declaring that he kicked and headbutted officers. He further described that after being tackled to the ground he attempted to grab at officers "randomly," demonstrating a clenching and twisting motion with his hands. His statements – recorded – were glib and unremorseful.

Defendant's uncommon and unusually violent resistance to his arrest involved five federal law enforcement officers, and the physical struggle caused injuries. Adult Victim 1 (AV1) reported being kicked several times in the left knee and shin, leaving the area sore and tender to the touch; ice was applied afterward to reduce swelling and pain. AV2 reported being kicked in the lower left leg, thigh, and left arm, and experienced pain in the forearm and elbow after the incident. AV3 reported that, before the defendant was detained, the defendant punched him and struck his helmet visor. AV3 further reported that during the ensuing struggle, the defendant grabbed AV3's groin and pinched his scrotum and also kicked AV3 in the back multiple times. AV4 reported that the defendant kicked him in the genitals and in the right knee, with the genital kick causing "great pain" and prompting AV4 to momentarily withdraw from the altercation. AV5 reported that while trying to restrain the defendant, the defendant grabbed and squeezed AV5's genitals, causing pain, and that even after the defendant was handcuffed, the defendant kicked AV5 in the shin, causing a "flash of pain" that later subsided.

## II.    GUIDELINES APPLICATION

The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a). Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard. The parties have agreed that the defendant's

**Government's Sentencing Memorandum**                                    **Page 4**

relevant conduct, pursuant to USSG §1B1.9 and USSG §2A2.4, imposes a base offense level of 10.  Because the offense resulted in physical contact with the federal officer, the offense level is increased by 3 levels to offense level 13.

The government recommends a two-level reduction under USSG §3E1.1, because defendant has accepted responsibility consistent with the terms of his release and the plea agreement.

The government has also agreed to recommend an additional two-level reduction for early acceptance of responsibility because defendant accepted the terms of the plea agreement in a timely manner.

The resulting offense level, following adjustments and reductions noted above, is 9.  Because defendant has no prior criminal history, the resulting advisory guidelines calculation yields a range of 4 – 10 months.

## III.    DEPARTURES AND ADJUSTMENTS

Defendant's timely plea of guilty demonstrates that he fully admits and accepts responsibility under U.S.S.G. § 3E1.1 for his unlawful conduct in this case which is reflected in a two-level adjustment for acceptance of responsibility.

## IV.    RECOMMENDATION

### A.    Sentencing

The government has agreed to recommend the low end of the guideline range as determined by the Court.  The defendant is free to argue for any lawful sentence.

### B.    Conditions of Supervision

The parties have agreed that, during the term of probation, defendant is prohibited from entering the area surrounding the Immigration and Customs Enforcement Building in Portland

Oregon.  Defendant is specifically prohibited from entering the area bounded by South Gaines Street to the North; South Boundary Street to the South; Southwest Terwilliger to the West; and the Willamette River to the East. Defendant may use I-5 to transit the exclusion area so long as defendant does not depart the freeway or stop within the exclusion area Willamette River to the east.  The defendant may use I-5 to transit the exclusion area so long as the defendant does not depart the freeway or stop within the exclusion area.

## V.    RESTITUTION

There is no restitution in this matter.

## VI.    CONCLUSION

Based on the foregoing, the government requests that that the Court impose a sentence of four months' incarceration followed by two years of supervised release.

Dated: March 4, 2026.                    Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Gregory R. Nyhus*

_____
GREGORY R. NYHUS, OSB # 91384
Assistant United States Attorney